Good morning, Your Honors. May it please the Court. My name is Jim Frush, along with Jack Lovejoy, I represent the Eriksons. I was trial counsel for Raymond Erikson. These appeals are consolidated, and I am speaking for both Mr. Raymond and Mr. Sigmund Erikson here this morning. I think some of the most confusing language in the briefs relates to the standard of review and waiver, as to arguments raised or not raised below. I'd like to try to cut through that to begin. First of all, the Eriksons moved three times for a directed verdict or a judgment of acquittal. First, at the close of the government's case in writing, and obviously grounds and argument were raised. Secondly, without any argument and without any specification of grounds, they moved for a directed verdict at the close of the government's case. Then, within the proper amount of time, they filed a motion for a judgment of acquittal in writing, and obviously discussed grounds and made argument. Counsel, I appreciate the fact that you're making this procedural argument, but ultimately it's really talking about whether there was sufficient evidence to convict your clients of embezzlement and converting the employee's elective deferrals from the pension fund. Isn't that really what we're talking about here? Your Honor, there are some preliminary hurdles that you need to go through to get to that. First of all, you have to determine whether or not there was a valid 401k provision in the plan, and that is a question of law, which under Halliburton is decided de novo by this Court, and that's why I bring it up in the context of the standards of review. I appreciate that, but I guess what I'm hearing you say is, you know, your client three times made this motion, but there's got to be some substance to hear the motion and decide the motion, and that goes back to the sufficiency of the evidence and the law, for that matter. Yes, Your Honor, and both in the district court and here, we are saying that there are issues of law as to whether a 401k provision existed, and secondly, whether the document, the valuation statement, was a required document. Right, and the trial court concluded that there were. Well, the trial court concluded that the trial court really did decide these as issues of law. What the trial court did was let them go to the jury, and they're in the instructions. The trial court did decide, and I think it's what Your Honor is getting at, that's the sufficiency of the evidence of knowledge of falsity and the intent required for conversion. That's your classical direct averted kind of standard, but we're suggesting here, it's very clear that you need to decide afresh, de novo, whether there were 401k provisions and required document involved, and we argue to the district court, which really ignored these arguments, that, in fact, these were legal questions that he needed to decide, and he did not. Well, are you saying there were not valid 401k provisions? Yes, Your Honor. We're saying as a matter of law there were not valid 401k provisions. At what time period? Because I'm looking at the 2002 documents that start at Excerpt 222, which is called a 401k profit sharing plan. It's signed by the Erickson's, and then there's a consent at ER 341, also in 2002, which consents to a 401k. So what period of time are you talking about? At no time were there valid 401k provisions. As to the 2002 plan, Your Honor, that required under the terms of the 91 plan that there be executed by the administrator, and also, Your Honor, it was not dated as to when it was effective. But Count 17 and 18 dealt with conduct after January 1, 2002, which is when the plan reinstatement that Judge Graber referred to had been executed. Well, it was the plan was executed, Your Honor, but it was not a valid 401k provision. Now, why is that? For three reasons. One, the law is very clear that while you can have a course of conduct to create a plan, that when you have specific amendment provisions in a plan, they must be followed to the T. The 91 plan required that the administrator sign the amendments. That was not done. Also, Your Honor, Let me just clarify with respect. I was a transactions lawyer for 37 years, and I did lots and lots and lots of things with respect to ERISA. So let me just, in this context, deal with this kind of an issue here. So I understand that the Lundy Electric's bank received new trust certification papers in 1995. Do you disagree with that? I'm sorry, Your Honor. I'm not following. According to the transcript 918 and 919, there was evidence introduced that the bank of Lundy Electric received, in quotes, trust certification papers in 1995, purporting to represent that there had been an amendment. Do you disagree with that? No, Your Honor. Well, there was testimony to that effect. All right. So there was evidence. You also have the IRS form 5500 showing employee contributions after 1995. Do you disagree with that? No, Your Honor. The accountant, Brad Summerfield, and various employees testified there was a 401k plan. Do you disagree with that? I don't disagree that they thought there was one, Your Honor. Okay. And the defendants themselves contributed their own money in 1999, which was before the 2002 documentation to which Judge Graber made reference. Do you agree with that? Yes, Your Honor. When you put all that together, even if the legal technicalities in accordance with the ERISA manuals and so on may not have been complied with, is there any question that there was sufficient evidence before the jury and the judge that they could have construed that everybody thought there was a 1995 amendment and that there was a 401k plan? It's our position, Your Honor, that the law makes it very clear that what people think doesn't matter. What matters in the context of a- How can you say that, counsel? What people think matters a great deal. If they act on it, there's a collateral estoppel. That's one of the oldest principles of contract law. Well, but this is regulatory law, Your Honor, and this is a situation where the law and the regulations in the case law say you have to amend the plan according to its terms. If I understand you correctly, you're saying that in an ERISA context, that if the attorney or accountant or others who are involved in preparing the documents make any mistakes in the technical preparation of the document, that it means that there is no plan. Is that what you're telling me? I'm telling you, Your Honor, with all respect, that the terms of amendment have to be complied with, or the cases say quite consistently that it's not effective. Give me any case that says that if everybody thinks there's one, and there are little minor technical details, but everybody acts as if there were, that there is no such beast. I don't have such a case, Your Honor. There isn't one, is there? But let me perhaps answer your question this way, Your Honor. Even if there was a plan in effect, the fatal deficiency of this prosecution is that they relied on the plan asset regulation to secure the conviction. The case law in Wolfe and Christo is clear, the One Regulation O case and the case involving bank overdrafts, that when the government uses a regulation like this in the context of a statute, and here the government charged a violation of the plan asset regulation, and it argued it in its opening, it put on testimony, it argued in its closing, that's the basis on which the jury convicted. What in the regulation precludes its consideration in this context? Your Honor, the language, the parenthetical language that we've cited in the regulation, precludes its consideration, where it says it shall have no implication for criminal prosecution. Well, it doesn't quite say exactly that. I'm looking for the subsection. Your Honor, even if that parenthetical was not in there, both Wolfe and Christo say very clearly that you can't bring a prosecution based on violation of the regulation as a theory of the case. In the regulation O situation in Wolfe and a bank overdraft in Christo, there was not that parenthetical. Our argument is twofold. First, they have to get by the parenthetical, which says it's without implication for criminal prosecution, and then they have to get past the holdings in Wolfe and Christo, which say that you cannot bootstrap a series of regulatory violations into felonies under 664. Counsel, 664 is a very broad statute about embezzlement. So let's switch the context here. Let's just say that we were talking about the employee's Social Security money. Is there any question in your mind that had your clients decided to, instead of paying as required, the Social Security contributions, VICA, FUTA, and so on, had decided to use those for the operation of the business? Any question in your mind whatsoever that 664 would apply? 664 would apply, could apply to the conduct you have before it. What Wolfe and Christo say very clearly is that once you interject the regulation as the basis for criminal liability, it so taints the proceedings that they cannot stand. And Christo, in fact, held that that was plain error. Even in Wolfe, where a cautionary instruction was given, that it was simply background noise, that it was to be considered as background, the regulation, this circuit held you cannot bring a conviction with this type of prosecution. And that's apart from the parenthetical. What about conversion? How does that, as Wolfe, apply to that? Well, it applies, Your Honor, because here the government argued and presented the case as though conversion occurred on the 15th, on the 16th day after the money should have, the beginning of the month. That's your argument with respect to the regulation, right, the 15th day? Yes, Your Honor, the government, that was the government's argument to the jury, that once you get to 15, day 16, they've committed a crime. And that was testified to by the government witness. It was argued in the opening. It was in the indictment. And it was in Exhibit 800 that went to the jury, which is the only way they could have. Isn't that just the timing, though? Let's just say that they had put the 30th day or the 100th day or whatever. What they're talking about, is it not, is the fact that under the regulations, you're supposed to make these contributions within a certain period of time. That was not done. Neither was it done, you know, 90 days later, 100 days later, a year later, and so on. So under those circumstances, irrespective, irrespective and regardless of the regulation, doesn't this meet the requirement of the elements of conversion? It could have, Your Honor. And that's, in fact, what Crystal Wolf says. But the language in Crystal is very clear that once you introduce that, you taint it. They could have brought, they should have brought this prosecution without mention of the regulation. Well, let me just say, for my part, I read the regulation to say that the compliance with it can't be, the regulation cannot bar a prosecution. But I don't see anything in it that suggests that it can't support a prosecution. And, in fact, it just seems to me that what, that your clients benefited in a sense from this, because under the theory of the case that was presented to them, they could have accepted the float and used that money for 14 days for their own benefit and then paid it out on day 15 without becoming criminally liable. And I think that's probably overly generous to them. So I guess even if there's an error here, I don't understand how it could possibly have harmed them. There was no payment over of money that wasn't theirs. Well, Your Honor, the harm was that the theory of the case is presented to the jury. And this is what Wolf and Crystal say, where they don't have a parenthetical in the regulation, is that it bootstraps regulatory violations into felonies. Well, the statute says you can't use the money for yourself. It doesn't belong to you. You are a fiduciary. That's a statutory provision. Are we together so far? If somebody just took all the money and went to the Bahamas and never paid it over, that that's a violation under the statute? Yes, Your Honor. Okay. So the basis of the prosecution is a statute, and the only evidentiary value this has is to say, well, it demonstrates that they knew or should have known that the money wasn't theirs. Well, Your Honor, they always knew the money wasn't theirs. They never pretended otherwise. In fact, when everybody left the plan during this period of time, they would get all the money that was due them. I can't respond other than to say that we believe the parenthetical, and as you questioned one of the counsel in the cases up here, there's language in there. It has to mean something. Well, it says it doesn't bar a prosecution. What does that say about supporting a prosecution? It says without implication for a prosecution and without barring a prosecution. It is our position that you have to read that other language out of the regulation, otherwise it doesn't make any sense. It would be surplusage. And the court can read it to be consistent with without implication for criminal prosecution and without barring a prosecution. Why couldn't they have said that? Well, they did say that, Your Honor. They said without implication for criminal prosecution. And our second position, Your Honors, is that even without the parenthetical under Wolfe and Christo, it's so tainted. And they could have charged it, and they should have charged it when they sent the case back, and I believe it was Christo, they said strike that regulatory stuff as surplusage. It is surplusage. They should have tried this case as a straight conversion case. They chose to try it as a plant asset violation, and they bootstrapped those regulatory violations. Which seems, as I say, to be to your client's benefit, because they never remitted these amounts until they were under investigation and everything fell apart. They didn't remit them on day 16 or day 17. Your Honor, they remitted them during the four years that this was going on. Every time an employee would leave, they would receive in full all the accrued amounts. Your Honor, they accrued the payments as payments due the plan on the books of the company. They accrued the payments on the books of the plan as receivables due from the company. They paid every employee, or rather the plan administrator, Mr. Summerfield, paid every employee as they left during that four-year period. This was all, Your Honors, if you – Counsel, with respect, I'm sure your people are nice folks. They may have – this maybe got out of hand. I don't know. But the reality is you can't use Social Security money, you can't use somebody else's money in anything and use it as a float, even if you pay it back. That's the old racetrack theory. I borrowed the money from the bank when I was a teller. I would go into the racetrack. I knew I was going to win, and I was going to pay it back. Nobody was ever going to be out. And the fact is they did pay it, but they were lucky. What if they had gone bankrupt before? What if they didn't have the money to pay it back? Your Honor, I agree with you if they had tried it in that fashion, but they chose to rely on the regulation. Well, if you're wrong about the regulation, as I say, I read it purely to say that this doesn't bar a prosecution or have any implication negative to a prosecution. I don't really see it as saying what you say it says. So if you're wrong about the regulation, do you lose the case? No, Your Honor, because Wolf and Christo had regulations without parentheticals, and your court said exactly in Wolf you can't use regulation at all. Okay. I'm not really getting an answer. I guess maybe I'm not asking the question very well. If your whole idea about the regulation is not one that we agree with. As far as the parenthetical? The parenthetical, the Wolf, the whole thing, if we just don't agree with that, if we think it's permissible to use the regulation, where are you in the case? I think then we go, Your Honor, to two things. Let's go right to the expert witness, Bill Whitman. That, Your Honor, should under the Bahamandi decision of this circuit be reviewed de novo because it impacts a constitutional deprivation. In 16 pages of transcript, Your Honor, he was, the government objected nine times to his testimony. His testimony would have been, as you can tell from the questions asked, that the valuation statement was not a required document, that the exhibits put forward by the government were not sufficient to constitute an amendment adding a 401K provision, that the plan valuation statement was not false, and an additional host of other subjects. The government expert testified to all of these issues, and yet the government chose to object. When Mr. Allen asked the first time and was objected and sustained, he asked to approach. He was rebuffed. When I asked the question, the direct question, was this plan valuation statement a statement that was required to be maintained under RISA, the government objected, has asked and answered. I had never asked or answered it, and the objection was sustained and I was told to move on. There was a complete deprivation of the due process, a compulsory process. Counsel, you made various objections or proffers on this topic, but did you raise a Sixth Amendment claim to the district court? We did not, Your Honor, but I suggest that even under the abuse of discretion standard, you should reverse. But if you read the Bahamandi decision where a testimony of an agent was excluded, there's no indication there that any constitutional claim was brought. The circuit, our circuit, said that when you reach a certain point, the first inquiry, it's in footnote four, is whether it constituted a due process and compulsory process violation. And that is considered de novo. That's footnote four in Bahamandi. Then it says if you get past that analysis, then you go as to whether there was an abuse of discretion. Counsel, you have about a minute left. If you'd like to save some of it for rebuttal. Only I would say, Your Honor, I'll save it for rebuttal. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. My name is Michael Morgan. I represent the United States on this appeal. The notion that this was a prosecution based on a series of regulatory failures simply cannot be squared with this record. The record is that beginning in 1999 and continuing until a grand jury subpoena hit their desk, the defendants failed to remit the employee contributions to the 401K plan. That was the government's theory of the case. That's what was proven. The only reason that the regulation was mentioned, and it wasn't even mentioned specifically, it was just the legal terms of the regulation, was simply that it defines what a plan asset is. That is a term that is amazingly, actually, not defined in the ERISA statute, but it's defined in the Department of Labor's regulations. And it simply says that employee contributions become assets of the plan as soon as they can be reasonably segregated from the employer's general funds, and in no event later than the 15th business day of the month following the withdrawal. So that's all this was about. It was just to give the jury an idea of what it means for something to be a plan asset. So the idea that this case is controlled by Wolf is just simply incorrect. This was a straight-up embezzlement slash conversion prosecution. All the government had to prove was that plan assets were wrongfully applied. The jury needed to know what plan assets were. The government told them. The expert witnesses told them. The defense's expert witnesses told them. So I really... If the counsel correct me if I'm wrong, I think what I heard the opposition say is that there was no plan, and since there was no plan, there was nothing to convert and nothing to embezzle. I've heard that, and I'm still trying to get my head around the idea that there's no plan. Everyone thought there was a plan, as Judge Smith pointed out.  And every single document that's ever been presented says there's a 401K plan. Every year, all the employees got statements saying this is your 401K plan statement. The defendants themselves contributed to the plan at some point, did they not? The defendants themselves contributed to the plan, which is kind of unusual if there was no plan. But leaving all of that aside, the fact of the matter is this case is controlled by the 2002 plan, which was signed by everybody. So even if they were correct that there was some technical defect in the 1995 plan, the 2002 plan was signed by everyone. And so your theory about that is that even though some of these contributions related back to a time before 2002, the defendants retained those amounts after the 2002 plan went into effect. Well, no, Your Honor. The reason why I say the 2002 plan is all that matters now is because the only counts on which the jury convicted, 17 and 18, involved withdrawals that took place when the 2002 plan was in effect. Okay, I see what you're saying. That's all I'm saying. For purposes of this appeal, you really only need to decide whether or not the 2002 plan was in effect. So from your perspective, the discussion about Wolfe and Christo and the regulations is a red herring? It's a complete red herring. This is just a straight-up conversion case. It's not, again, the defendants were not charged with not remitting the plan contributions on the 16th day. That's just not the way this case was presented. And so unless the Court has any other questions about the effectiveness of the plan, I guess I should respond quickly to the argument that the plan amendment procedures weren't adhered to because the administrator didn't sign it. Well, the fact of the matter is that the administrator were the two defendants, and they both signed it, and they signed it as the employer, and the plan defines the administrator as the employer. So I don't understand how even under their theory they're correct. With respect to the expert witness, most of the testimony that was excluded involved things that had nothing to do with this case, whether a pool plan is more popular or less popular. How does that have anything to do with anything that's going on in this case? With respect to the expert wanting to opine about whether or not the plan valuation statement was a required document, he already testified to that. He said they didn't have to maintain that. They had to maintain the information necessary to produce the report. So this report was quite correct. He had asked the question. The substantive had been answered. This was just cumulative. And I should have just addressed one other objection that was arguably relevant, or sorry, not relevant, but that wasn't addressed in our brief, and I apologize for that. It was such a blunderbuss attack, I missed the one. The defendant was asked, or the expert was asked, in your opinion does that statement as written indicate that the money, meaning the valuation of the account at the end of the year, that that money is actually in the account in the retirement plan? That was the question. And that question was supposedly asked to determine whether or not the participant valuation statement was false, in that it represented that the contributions had been remitted to the plan. Well, that's not what that statement asks. It asks is the valuation, the value of the participant's account accurate? That wasn't an issue. No one disputed that under the accrual accounting principles, that they were calculating what the liability was. The question for the participation value statement was whether it was false and that it represented that the employee contributions had been remitted. So when the district court excluded that, again, it was just a simply irrelevant question. Unless the Court has any other questions about any other aspect of the case. Thank you, Your Honors. I think we don't, but Mr. Frisch, you have a little bit of rebuttal time remaining. I'd only say, Your Honor, that the statement was not false. We never got a chance to present evidence on that fact. That does go to the sufficiency argument. We also did not get a chance to present evidence that it wasn't a required document. Do you agree that if somebody under accounting rules states, or rather I should say under the accrual basis, if you state that there's a note in there and, you know, it meets that, but under separate law, under ERISA law, there's been no remittance? Those are entirely different issues. Well, no, Your Honor, because the case law makes it very clear, and this is why we kept hammering there was no valid 401K provision. The case law says very clearly that if you have what you're talking about, which is a course of conduct where people are making elected deferrals and they're not being forwarded, they are treated as employer's contributions, and the case law is clear on that. And that's why it's important that the technical aspects of the plan be adopted. It isn't to say that the employees don't have a right to those monies. They do. But the case law says that when you don't have a valid 401K and you take elected deferrals, they're treated as employer's contributions. We tried to get our expert to testify to that. We weren't successful either. Do you agree with the government that since counts, I think, 17 and 18, can only deal with post-2002 plan amendment actions, that this whole discussion about Christo and Wolf and the regulation is a red herring? Absolutely not, Your Honor. In fact, the fact that you have all this ahead of it is a taint that you're not going to get rid of. But secondly, they threw out this prosecution, and we have in our reply brief, this was a prosecution about violating the regulation. And that gets us into the good faith argument. I know Your Honor's written already in the Henderson case on knowledge of illegality. Counsel, you're beyond the scope of what was argued, and this is rebuttal, so. I think this relates to, well, all right, Your Honor, I simply ask you to look at those arguments carefully. This was not a red herring, the regulation, because the case was prosecuted on that basis. Look at Exhibit 800. Look at the verdict form. Look at the arguments of counsel in closing, the testimony of the witness, the opening arguments. This was the situation in Christo where a series of regulatory violations were bootstrapped into felonies. Now, if they had prosecuted it without the regulation, I wouldn't have this argument. And, of course, we have the parenthetical that we add to it. But Christo makes it very clear that, and they say right in there, even though this would have been a violation of the statute and it also violates the regulation, when you interject the regulation as a basis for the jury to find criminality, which happened as to those two counts, then you have a situation where the taint is such that it's plain error and it must be reversed. Counsel, we understand your arguments and you have exceeded your time. Thank you very much. The case just argued is submitted. The arguments of both counsel have been very helpful, and we will stand adjourned for this morning's session.
judges: Graber, M Smith, Cjj Benitez (S. Cal.), Dj